IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, <br><br> Plaintiff, <br><br> vs. <br><br> MIDWEST INSTITUTE FOR MEDICAL ASSISTANTS, INC., <br><br> *Serve c/o Registered Agent* <br> Christine Shreffler <br> 4260 Shoreline Dr., Ste. 100 <br> Earth City, MO 63045 <br><br> Defendant. | Case No.: <br><br> Jury Trial Demanded |

## COMPLAINT

NOW COMES the Plaintiff, proceeding under the pseudonym "John Doe," pursuant to his contemporaneously-filed Motion for Leave to Proceed under Pseudonym, and for his Complaint against Defendant Midwest Institute for Medical Assistants, Inc. ("Midwest Institute" or "Defendant"), states as follows:

### Introduction, Parties, and Claims

1.  This is an action brought to enforce Title III of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12181-89, and its implementing regulations, 28 C.F.R. Part 36 (Count I), and for damages under state law claims for tortious intrusion on seclusion (Count II) and negligent infliction of emotional distress (Count III).

2. John Doe is an HIV-positive student currently enrolled in an associate's degree program ("the Program"), in a healthcare-related field, at Midwest Institute. Mr. Doe has prior work experience as an emergency dispatcher, EMT training, and completed two-and-a-half years of a pre-med program at a public research university in St. Louis, Missouri. Mr. Doe is a citizen of the State of Missouri and resides in St. Louis County, Missouri.

3. Defendant is a for-profit technical college offering associate's degree and non-degree undergraduate certificate programs in healthcare-related fields. Defendant is organized as a corporation under the laws of the State of Missouri, and its principal place of business is located in Earth City, St. Louis County, Missouri.

4. The discrimination against Mr. Doe underlying this lawsuit includes: (1) Defendant's denial of the opportunity of Mr. Doe to participate in and benefit from its services, facilities, privileges, advantages, and accommodations because Mr. Doe is HIV-positive; (2) Defendant's use of standards, criteria, and methods of administration that have the effect of discrimination on the basis of an individual's HIV-positive status; and (3) Defendant's imposition and application of eligibility criteria that screen out, or tend to screen out, HIV-positive individuals from fully and equally enjoying Defendant's services, facilities, privileges, advantages, and accommodations.

## Jurisdiction and Venue

5. This Court has jurisdiction over John Doe's ADA claim (Count I), pursuant to 28 U.S.C. § 1331, in that this claim arises under federal law.

6. This Court has jurisdiction over Mr. Doe's claims for tortious intrusion on seclusion (Count II) and negligent infliction of emotional distress (Count III), pursuant to 28 U.S.C. § 1367(a), in that these claims are so related to Mr. Doe's ADA claim that they form part of the same case or controversy.

7. Venue is proper in the Eastern District of Missouri, pursuant to 28 U.S.C. § 1391(b)(1), because Defendant resides in this District. Venue is also proper in this District, under 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to Mr. Doe's claims occurred in this District.

## Allegations Common to All Counts

8. On or about June 13, 2017, John Doe enrolled as a student in the Program, and Defendant gave Mr. Doe numerous orientation and policy documents, including statements of Defendant's expectations of students in the Program and Defendant's attendance policy.

9. None of the orientation materials given by Defendant to Mr. Doe indicated that he had any obligation to disclose his HIV-positive status or that an HIV-positive student would be unable to successfully complete the Program or participate in any of Defendant's services.

10. The approximate cost of tuition for the Program was $38,076.00.

11. Mr. Doe paid all tuition, fees, and costs as required by Defendant and began attending classes on or about July 17, 2017.

12. While attending the program in 2017, Mr. Doe completed all required coursework without issue and developed positive professional and working relationships with his instructor and classmates.

13. Due to his involvement in competitive sports, Mr. Doe was occasionally unable to attend classes due to competition-related travel. However, Mr. Doe's instructor never took any issue with this, and Mr. Doe completed required make-up assignments and classwork as directed by his instructor.

14. Mr. Doe was never disciplined or counseled regarding his absences.

15. As Mr. Doe continued to progress in the Program, in 2018, Mr. Doe began attending more specialized, surgical technology-focused courses taught by a different instructor, Michelle Link.

16. At all relevant times, Ms. Link was an agent and employee of Defendant, acting within the course and scope of her employment.

17. Initially, Mr. Doe's experience in the Program did not change as he began attending the courses taught by Ms. Link.

18. On or about January 29 and/or 30, 2018, Mr. Doe was admitted to the emergency room, believing that he had contracted pneumonia. Mr. Doe was treated and discharged, and the treating physician advised that he could return to class.

19. On or about February 1, 2018, when Mr. Doe returned to classes at Midwest Institute, he was confronted by Ms. Link about his recent absence.

20. Ms. Link stated that Mr. Doe's absences were uncharacteristic of his attendance record, and she asked him to explain himself.

21. Mr. Doe stated that he had been very ill, but Ms. Link was unsatisfied with this explanation and demanded a record from the emergency room in order to allow Mr. Doe to return to class.

22. Although Mr. Doe repeatedly stated that he did not feel comfortable discussing his health with Ms. Link, Ms. Link stated that Mr. Doe was required to provide Ms. Link with a medical record related to his absence.

23. When Mr. Doe reluctantly produced a medical record from the hospital, Ms. Link continued to interrogate Mr. Doe about his health and specifically asked him about medications identified in the medical record.

24. Feeling extremely pressured by Ms. Link's interrogation, Mr. Doe finally stated that he was HIV-positive.

25. Upon learning of Mr. Doe's HIV-positive status, Ms. Link responded with visible disgust and made a number of discriminatory, harassing, and offensive statements to Mr. Doe, including that:

   a. He would probably be unable to complete the Program due to his HIV-positive status;

   b. He would probably be terminated from the Program due to his HIV-positive status;

   c. He should not discuss his HIV-positive status with anyone;

   d. In order to have any chance of remaining in the Program, he must immediately produce a letter from a physician explaining his medical condition and expressing the opinion that he does not have a "communicable disease";

5

  e. He would be terminated from the Program immediately if any test indicated that he had a "communicable disease";

  f. He would pose a risk to any patients that he worked around;

  g. He would be incapable of employment in healthcare because he has a "highly contagious" and "chronic" virus; and

  h. Even if he is not terminated from the Program, he will need to be "better" than all of his peers to ever have an opportunity of employment in healthcare—because "no one is going to want to hire someone with HIV."

26. Mr. Doe was shocked and humiliated as a result of Ms. Link's statements, and he experienced medically-diagnosable, severe anxiety and emotional distress, for which he later underwent treatment.

27. Shortly after his meeting with Ms. Link, Mr. Doe consulted with the specialist physician treating his HIV-positive condition and explained Ms. Link's request for a written opinion that he did not have a "communicable disease."

28. Mr. Doe's physician opined that there was no reasonable, medical basis for Ms. Link's request, that the request seemed patently discriminatory, and that the physician could not prepare a letter without further explanation.

29. When Mr. Doe returned to classes, he asked Ms. Link to provide a written explanation for the requested physician's letter, as well as an explanation for the basis for his potential termination from the Program.

30. On or about February 19, 2018, Ms. Link provided Mr. Doe with a document titled "Communicable Disease Policy," a copy of which is attached hereto and marked as "Exhibit A." Ms. Link stated that this Policy was the basis for her

request for the physician's letter, and she falsely stated that the Policy was included with the original orientation materials provided to Mr. Doe upon enrollment.

31. Defendant's "Communicable Disease Policy" is discriminatory and is not supported by any rational basis. In fact, the U.S. Department of Justice has mandated that for "occupational training and licensing requirements, the terms 'infectious, communicable, or contagious disease' **must exclude** diseases, such as HIV, not transmitted through casual contact or through the usual practice of the occupation for which a license is required."[1]

32. Ms. Link continued to make discriminatory, harassing, and offensive statements to Mr. Doe and to threaten his termination from the Program, including, on or about February 21, 2018, by falsely stating that Mr. Doe would receive an "F" on a major assignment because a "virus" was detected in the file he submitted.

33. By this point, Mr. Doe began to recognize that Ms. Link's statements and conduct was damaging his professional and personal relationships with his classmates. Ms. Link's conduct in front of Mr. Doe's classmates included:

   a. Inexplicably referring to Mr. Doe as "fatty" in front of classmates;

   b. Stating, in front of the class, that Mr. Doe may not be eligible to participate in an "externship" or "clinical," which is a requirement for completion of the Program;

   c. Calling Mr. Doe to the front of the classroom to hand him documents and stating that he had "health issues" and "health problems";

---

[1] U.S. Dep't of Justice, Civil Rights Division, *Questions and Answers: The Americans with Disabilities Act and the Rights of Persons with HIV/AIDS to Obtain Occupational Training and State Licensing*, https://www.ada.gov/qahivaids_license.pdf (last accessed Mar. 26, 2018) (emphasis added).

7

    d. Issuing Mr. Doe an attendance report, reflecting his health-related absences, in front of his classmates and demanding that he immediately review and return it; and

    e. Discussing and making references to Mr. Doe's medical condition in public areas, where Ms. Link's statements may have been overheard by third-persons.

34. Ms. Link's conduct was intended to harass and humiliate Mr. Doe, because he is HIV-positive, into withdrawing from the Program.

35. Mr. Doe repeatedly attempted to address Ms. Link's conduct with Defendant, both through his attorney and by personally contacting Defendant's Director of Education, Amy Pandolfo.

36. At all relevant times, Ms. Pandolfo was an agent and employee of Defendant, acting within the course and scope of her employment.

37. After being made aware of Ms. Link's conduct, Ms. Pandolfo declined to take any action to discipline Ms. Link or clarify any of Defendant's policies.

38. Ms. Pandolfo instructed Mr. Doe to refrain from discussing Ms. Link's conduct unless Ms. Pandolfo was present.

39. Ms. Pandolfo falsely informed Mr. Doe that she had discussed the matter with Mr. Doe's attorney and that she had provided his attorney with all requested information.

40. Ms. Pandolfo's conduct was intended to harass and humiliate Mr. Doe, because he is HIV-positive, into withdrawing from the Program.

41.    As a result of Defendant's conduct, Mr. Doe has felt dehumanized and humiliated and continues to experience medically-diagnosable anxiety and emotional distress.

## COUNT I
### Title III of the Americans with Disabilities Act

42.    The allegations of Paragraphs 1 through 41 are hereby re-alleged and incorporated by reference, as if fully set forth herein.

43.    John Doe is an individual with a disability within the meaning of 42 U.S.C. § 12102(1), pursuant to 28 C.F.R. §§ 36.105(b)(2), (d)(2)(iii)(J).

44.    Defendant is a public accommodation within the meaning of 42 U.S.C. § 12181(7).

45.    Defendant discriminated against John Doe on the basis of his disability in the full and equal enjoyment of its services, facilities, privileges, advantages, and accommodations, in violation of Title III of the ADA, 42 U.S.C. § 12182(a), and the implementing regulations at 28 C.F.R. Part 36, by:

   a. Denying Mr. Doe, because he is HIV-positive, the opportunity to participate in and benefit from Defendant's services, facilities, privileges, advantages, and accommodations by threatening to terminate him from the Program, in violation of 42 U.S.C. § 12182(b)(1)(A)(i) and 28 C.F.R. § 36.202;

   b. Using standards, criteria, and methods of administration—including the use of the "Communicable Disease Policy" and Defendant's attempts to discourage Mr. Doe's continued enrollment—that have the effect of discrimination on the basis of an individual's HIV-positive status, in violation of 42 U.S.C. § 12182(b)(1)(D) and 28 C.F.R. § 36.204; and

   c. Imposing and applying eligibility criteria—including the use of the "Communicable Disease Policy" and Defendant's attempts to

discourage Mr. Doe's continued enrollment—that screen out, or tend to screen out, HIV-positive individuals from fully and equally enjoying Defendant's services, facilities, privileges, advantages, and accommodations, in violation of 42 U.S.C. § 12182(b)(2)(A)(i) and 28 C.F.R. § 36.301(a).

46. This Court has authority, pursuant to 28 C.F.R. §36.501(a), to award Mr. Doe preventive relief, including a permanent or temporary injunction or restraining order.

47. Without preventive relief, Mr. Doe is in danger of being terminated from the Program, forfeiting tuition and expenses paid to Defendant, and being denied the opportunity to participate in a clinical and/or externship program or other course as required for graduation and as necessary to become a competitive candidate for employment.

48. This Court has authority to award Mr. Doe his reasonable attorney's fees, litigation expenses, and costs pursuant to 42 U.S.C. §12205.

49. As a direct and proximate result of Defendant's conduct, Mr. Doe has incurred attorney's fees, litigation expenses, and costs to prosecute his ADA claim.

WHEREFORE, for the foregoing reasons, Plaintiff John Doe respectfully requests that this Court enter a judgment in his favor and against Defendant Midwest Institute for Medical Assistants, Inc. on Count I of his Complaint, and award the following relief:

(a) Enjoin Defendants, its officers, agents, employees, and all other in concert or participation with it, from engaging in discrimination against individuals

with disabilities, and specifically from failing to comply with Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulations, 28 C.F.R. Part 36;

(b)     Order Defendant to comply with the requirements of Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulations, 28 C.F.R. Part 36;

(c)     Order Defendant to take such affirmative steps as may be necessary to restore, as nearly as practicable, Mr. Doe to the position that he would have been in but for Defendant's conduct;

(d)     Award Mr. Doe his reasonable attorney's fees, litigation expenses, and costs herein expended; and

(e)     Order such other appropriate relief as the interest of justice require.

*PLAINTIFF DEMANDS A TRIAL BY JURY.*

## COUNT II
### Tortious Intrusion on Seclusion

50.     The allegations of Paragraphs 1 through 49 are hereby re-alleged and incorporated by reference, as if fully set forth herein.

51.     At all relevant times, John Doe was entitled to a right of privacy in his health information, medical history, and HIV-positive status.

52.     Defendant intentionally intruded upon the private, personal affairs of Mr. Doe in an unreasonable and highly offensive manner, including by:

   a. Demanding information about Mr. Doe's admission to the hospital while he was absent from class for two days, under threat of terminating him from the Program;

   b. Demanding access to Mr. Doe's medical records to review treatment he underwent while absent from class for two days, under threat of terminating him from the Program;

    c. Demanding information about the reason that Mr. Doe was prescribed medications listed in his medical records, under threat of terminating him from the Program; and

    d. Demanding personal, private, and intimate details about Mr. Doe's HIV-positive status and medical history, without any legitimate grounds.

53. As a direct and proximate result of Defendant's conduct, Mr. Doe has suffered damages, including for medical bills and expenses and for medically-diagnosable anxiety and emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff John Doe respectfully requests that this Court enter a judgment in his favor and against Defendant Midwest Institute for Medical Assistants, Inc. on Count II of his Complaint, and award the following relief:

(a) Award Mr. Doe compensatory damages in an amount in excess of $75,000, sufficient to compensate him for medical bills, expenses, and emotional distress suffered as a result of Defendant's conduct;

(b) Award Mr. Doe his litigation expenses and costs herein expended; and

(c) Order such other appropriate relief as the interest of justice require.

*PLAINTIFF DEMANDS A TRIAL BY JURY.*

## COUNT III
### Negligent Infliction of Emotional Distress

54. The allegations of Paragraphs 1 through 53 are hereby re-alleged and incorporated by reference, as if fully set forth herein.

55. At all relevant times, Defendant owed John Doe a duty to exercise ordinary care to protect the privacy of his educational records, including medical information disclosed to Defendant, as well as to refrain from unreasonable or offensive conduct in the administration of its policies, the supervision and discipline of instructors, and the instruction of courses at its facilities.

56. Defendant breached its duty to Mr. Doe by:

   a. Falsely telling Mr. Doe that his HIV-positive status would prevent him from completing the Program;

   b. Threatening to terminate Mr. Doe from the Program due to his HIV-positive status;

   c. Falsely telling Mr. Doe, based on his HIV-positive status, that he was required to produce a letter from a physician explaining his medical condition and expressing the opinion that Mr. Doe does not have a "communicable disease";

   d. Falsely telling Mr. Doe that he poses a risk to patients;

   e. Falsely telling Mr. Doe that he would be incapable of becoming employed in the medical field because he has a "highly contagious" and "chronic" virus;

   f. Falsely telling Mr. Doe that "no one is going to want to hire someone with HIV";

   g. Falsely stating, in front of a room of students, that Mr. Doe may not be eligible to participate in an externship or clinical course, which is a requirement for completion of the Program;

   h. Discussing and making references to Mr. Doe's medical condition in public areas, where statements could be overheard by other students;

   i. Failing to inform, train, and/or advise its instructors and faculty about common disabilities, including HIV, as reasonably necessary to avoid making misinformed, bigoted, ignorant, and highly offensive statements to students with disabilities;

    j. Failing to train its instructors and faculty in the administration of Defendant's "Communicable Disease Policy" and/or attendance policy so as to avoid the unnecessary and highly offensive intrusion upon students' privacy; and/or by

    k. Failing to supervise its instructors and faculty in the administration of Defendant's "Communicable Disease Policy" and/or attendance policy so as to avoid the unnecessary and highly offensive intrusion upon students' privacy.

57. Defendant knew or reasonably should have known that its conduct involved an unreasonable risk of causing Mr. Doe to experience emotional distress.

58. As a direct and proximate result of Defendant's conduct, Mr. Doe has suffered damages, including for medical bills and expenses and for medically-diagnosable anxiety and emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff John Doe respectfully requests that this Court enter a judgment in his favor and against Defendant Midwest Institute for Medical Assistants, Inc. on Count III of his Complaint, and award the following relief:

(a) Award Mr. Doe compensatory damages in an amount in excess of $75,000, sufficient to compensate him for medical bills, expenses, and emotional distress suffered as a result of Defendant's conduct;

(b) Award Mr. Doe his litigation expenses and costs herein expended; and

(c) Order such other appropriate relief as the interest of justice require.

*PLAINTIFF DEMANDS A TRIAL BY JURY.*

Case: 4:18-cv-00461-CDP   Doc. #: 1   Filed: 03/27/18   Page: 15 of 16 PageID #: 15

Respectfully submitted,

MARTIN LEIGH PC


By:     /s/ Adam A. Field
        Adam A. Filed, Bar No. MO64846
        7710 Carondelet Ave., Ste. 217
        St. Louis, MO 63105
        Tel.: (314) 862-5200
        Fax: (314) 863-4600
        Email: aaf@martinleigh.com

        ***Attorney for Plaintiff***
        ***"John Doe"***

Case: 4:18-cv-00461-CDP   Doc. #: 1   Filed: 03/27/18   Page: 15 of 16 PageID #: 15

**COMMUNICABLE DISEASE POLICY**

- Any student who has or contracts a communicable disease as so stated by a physician will be dismissed from theory and clinical with an excused absence.

- Make-up work will be assigned on an individual basis.

- All theory and clinical work must be made up; i.e. test, assignments, and quizzes.

- It is the students' responsibility to request make up work and to keep up with what he/she has missed.

- Re-entry is contingent on a signed physicians' statement stating the student is no longer communicable.- *This is required for externships*

*Addendum given on 02/19/2018 - not part of initial paperwork*

EXHIBIT A

49